**EMPLOYEES RETIREMENT SYSTEM OF TEXAS,**
Petitioner,

v.

**Xavier DUENEZ and Irene Duenez, Respondents.**

No. 07–0410.

Supreme Court of Texas.

July 3, 2009.

Greg W. Abbott, Attorney General of Texas, Kent C. Sullivan, First Asst. Atty. Gen., David S. Morales, Rafael Edward Cruz, Office of Atty. Gen., Kristofer S. Monson, Asst. Solicitor Gen., Austin, TX, for Petitioner.

Cynthia T. Sheppard, Cuero, TX, David C. Griffin, John W. Griffin Jr., Marek, Griffin & Knaupp L.L.P., Victoria, TX, Ruth A. Kollman, Corpus Christi, TX, for Respondents.

Justice BRISTER delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice O'NEILL, Justice MEDINA, Justice GREEN, and Justice WILLETT joined.

The curious question in this case is whether a state agency can demand dismissal of its own claim in court because it failed to exhaust administrative remedies in front of itself. The Employees Retirement System of Texas ("ERS") asserts a subrogation claim against former member Xavier Duenez and his family, seeking reimbursement of funds it paid their healthcare providers. After the claim was filed in court, ERS sought to dismiss it because it had exclusive jurisdiction of its own claim.

The Legislature granted ERS exclusive jurisdiction of questions relating to "payment of a claim," but ERS's subrogation suit seeks *collection* of a claim. When it pays claims, ERS holds the money and can require claimants to come and get it through the agency's administrative processes. But when ERS collects claims, someone else holds the money and has no reason to join ERS's administrative processes. That is why the first thing ERS's agent had to do was file suit in court.

Exhaustion of administrative remedies cannot be a prerequisite to filing suit when filing suit is itself a prerequisite to exhausting those administrative remedies. Because ERS does not have exclusive jurisdiction of this claim, the court of appeals' opinion does not conflict with any of our own, so we dismiss the petition for want of jurisdiction.

## I. Background

These parties are not new to this Court. When the Duenezes were injured in a collision caused by a drunk driver, ERS paid benefits of more than $400,000 through its agent and administrator, Blue Cross Blue

Shield of Texas.[1] But Blue Cross refused to pay for in-home nursing care for Ashley Duenez (deeming it custodial rather than medical), so the Duenezes filed suit in court without exhausting ERS's administrative remedies. We held in *Duenez I* that ERS had exclusive jurisdiction of claims for benefits, and thus dismissed the suit until the Duenezes complied with those administrative procedures.[2]

In the meantime, the Duenezes sued and obtained a judgment for $44 million against the convenience store that sold beer to the drunk driver. On appeal, three of the Duenezes settled their claims with the convenience store for $35 million. In *Duenez II*, we reversed the judgment as to the remaining two and remanded for a new trial to include apportionment of liability.[3] Neither Blue Cross nor ERS were parties in that case, but they hope to be reimbursed from the proceeds of the settlement.

Before we decided either *Duenez I* or *Duenez II*, ERS filed this suit for subrogation against the Duenezes. By then, the Duenezes were no longer participants in ERS: Xavier Duenez had left his employment with the state, obtained coverage from a new insurer, and dropped all claims for benefits from ERS.[4]

Blue Cross filed this suit on ERS's behalf, specifically alleging that the funds it sought were for ERS's benefit. Oddly, Blue Cross nevertheless named ERS as a defendant. And paradoxically, the suit sought both a court judgment and a declaration that no court had jurisdiction because ERS had exclusive jurisdiction.

ERS filed a plea to the jurisdiction demanding dismissal for the Duenezes to pursue their claims administratively even though they had no affirmative claims to pursue. The trial court denied ERS's plea to the jurisdiction, and the court of appeals affirmed.[5] ERS petitioned for review, asserting that the denial of its plea to the jurisdiction here conflicts with our opinion granting its plea to the jurisdiction in *Duenez I*.[6]

## II. Does ERS Have Exclusive Jurisdiction of Subrogation?

The Legislature created ERS to attract and retain state employees by providing health, insurance, and retirement benefits.[7] The powers granted ERS appear in the Texas Employees Group Benefits Act.[8] The Act authorizes ERS to adopt a plan "reasonably necessary to implement this chapter and its purposes."[9] ERS adopted a 70-page "Employee Benefit Plan" that

1. *See* Tex. Ins.Code § 1551.056; *Blue Cross Blue Shield of Tex. v. Duenez* (Duenez I), 201 S.W.3d 674, 676 (Tex.2006).

2. *Duenez I*, 201 S.W.3d at 676–77.

3. *See F.F.P. Operating Partners, L.P. v. Duenez* (Duenez II), 237 S.W.3d 680, 694 (Tex.2007).

4. *See Duenez I*, 201 S.W.3d at 675.

5. 221 S.W.3d 809.

6. *See* Tex. Gov't Code § 22.225(b), (c). We disagree with Justice Hecht that the issues here are nonjusticiable. ERS wants $400,000

from the Duenezes, and they do not want to pay; ERS wants this case decided administratively, and the Duenezes want their day in court. These are all live controversies that this case and this appeal can decide. *See U.S. v. Interstate Commerce Comm'n*, 337 U.S. 426, 430, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949) (holding that "courts must look behind names that symbolize the parties to determine whether a justiciable case or controversy is presented").

7. Tex. Ins.Code § 1551.002.

8. *Id.* §§ 1551.001–.407.

9. *Id.* § 1551.052(b).

included a subrogation provision on its penultimate page:

### Subrogation/Right of Recovery

To the extent of such services provided, the Plan is subrogated to all rights of recovery the Participant has and the Plan may assert such rights independent of the Participant. Also, if the Participant has obtained or obtains a court judgment, settlement, arbitration, award, or other monetary recovery from another party, because of the injury or sickness, the Plan is entitled to reimbursement from the proceeds of recovery to the extent of benefits provided. If a recovery is made, the Plan shall have first priority over the Participant or any other party to receive from said recovery reimbursement of the benefits the Plan has provided....

In the event that the Participant fails to cooperate with the Plan or prejudices its subrogation rights, the Plan may deduct from any pending or subsequent claim made under the Plan any amounts the Participant owes the Plan until such time as cooperation is provided or the prejudice ceases.

■ The Duenezes argue ERS had no authority to adopt this provision because the Act says nothing about subrogation. But the Act also says nothing about what services are covered or excluded, when preapproval is required, what range of charges are allowed, or how fast benefits must be paid—all important parts of a health benefits plan. Instead, the Act authorized ERS to specify these details in a plan that would "implement this chapter and its purposes." [10] The Act also expressly authorized ERS to "contain costs," [11] and to provide benefits "at least equal to those commonly provided in private industry." [12] As subrogation reduces costs, [13] and private plans commonly include subrogation, [14] we disagree that ERS was not authorized to include subrogation in the plan it adopted.

■ But allowing subrogation is not the same thing as granting exclusive jurisdiction of it. When an agency has exclusive jurisdiction of a dispute, the courts have no jurisdiction until administrative procedures are exhausted. [15] In deciding whether an agency has exclusive jurisdic-

---

10. *Id.* § 1551.052(b).

11. *Id.* § 1551.055(13).

12. *Id.* § 1551.002(2).

13. *Tex. Mut. Ins. Co. v. Ledbetter,* 251 S.W.3d 31, 35 (Tex.2008); *see* David Rosenberg, *Mandatory–Litigation Class Action: The Only Option for Mass Tort Cases,* 115 HARV L.REV. 831, 882 n. 99 (2002) ("The widespread use of insurance subrogation strongly indicates that individuals benefit from avoiding not only the moral hazard costs, but also the lost utility from paying for duplicative coverage.").

14. *See, e.g., FMC Corp. v. Holliday,* 498 U.S. 52, 54, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990); *Fortis Benefits v. Cantu,* 234 S.W.3d 642, 644 (Tex.2007); *see also* Katherine E. King, *The Interplay Between R.C. § 2315.20 and Robinson v. Bates,* 3 OHIO TORT L.J. 59

(2007)("[N] early every (if not every) health insurance plan and policy, as well as Medicare and Medicaid, includes a subrogation provision...."); *Gerard Sinzdak, Sereboff v. Mid–Atlantic Medical Services, Inc.: The Supreme Court's Current View on the Enforceability of Third–Party Reimbursement Clauses Under ERISA,* 27 BERKELEY J. EMP. & LAB. L. 523, 523 (2006) ("Employer health insurance plans commonly include third-party reimbursement clauses—sometimes referred to as subrogation clauses...."); Paul R. Thomson, III, *Insurance Subrogation—A Subrogation Clause in a Health Insurance Policy is Enforceable Even Though the Insured Has Not Been Made Whole,* 16 U. ARK. LITTLE ROCK L.REV. 475, 476 (1994) ("Clauses permitting subrogation commonly appear in insurance and construction contracts....").

15. *State v. Fid. & Deposit Co. of Md.,* 223 S.W.3d 309, 311 (Tex.2007); *Duenez I,* 201 S.W.3d at 675.

tion, we look to its authorizing legislation for an express grant of exclusive jurisdiction,[16] or for "a pervasive regulatory scheme" indicating that was the Legislature's intention.[17] Exclusive jurisdiction is a question of law we review de novo.[18]

■ The Act here expressly grants ERS exclusive jurisdiction of disputes relating to payment of a claim:

> The executive director has exclusive authority to determine all questions relating to enrollment in or *payment of a claim* arising from group coverages or benefits provided under this chapter other than questions relating to payment of a claim by a health maintenance organization.[19]

While the Act does not define "claim," it uses the term only in connection with demands for benefits.[20] Thus, we held in *Duenez I* that this provision granted ERS exclusive jurisdiction of claims "for payment of ERS-derived benefits."[21] But there is no claim for benefits in this suit. The Duenezes past medical bills have already been paid, and their future bills are the responsibility of a new insurer. The question here is not a member's claim for payment of benefits (as it was in *Duenez I* ), but ERS's claim for *reimbursement* of benefits it has already paid.[22]

Nor does the Act provide a detailed regulatory scheme suggesting ERS must have exclusive jurisdiction of its own subrogation claims. The Act provides many details about eligibility,[23] dependents,[24] coverage plans,[25] and contributions,[26] but there are no details suggesting a regulatory scheme for pursuing subrogation against third parties. To the contrary, the Act states that its administrative remedies "are the exclusive remedies available to an employee, participant, annuitant, or dependent," [27] but does not include ERS as a potential administrative claimant in that list. The Act also authorizes ERS to file suit (*not* an administrative claim) to resolve questions that might expose it to double liability.[28] Viewing the Act as a whole, it appears the Legislature intended ERS's administrative procedures to handle claims for benefits by employees, not claims against third parties by ERS.

■ Support for this conclusion also arises from ERS's own plan.[29] Of course,

---

16. *See, e.g., Houston Mun. Employees Pension Sys. v. Ferrell,* 248 S.W.3d 151, 157 (Tex. 2007); *Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 223 (Tex.2002).

17. *E.g., In re Sw. Bell Tel. Co.,* 235 S.W.3d 619, 625 (Tex.2007); *In re Entergy Corp.,* 142 S.W.3d 316, 323 (Tex.2004); *see also Thomas v. Long,* 207 S.W.3d 334, 340 (Tex.2006).

18. *Thomas,* 207 S.W.3d at 340; *David McDavid Nissan,* 84 S.W.3d at 222.

19. Tex. Ins.Code § 1551.352 (emphasis added).

20. *See, e.g., id.* §§ 1551.059, .062, .211, .215, .216, .259, .351, .354, .401.

21. *Duenez I,* 201 S.W.3d at 676.

22. *See Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 207–08 (Tex.2002) (holding exclusive jurisdiction of agency to regulate relations between car manufacturers and dealership owners did not include tortious interference claim by prospective buyer).

23. *See* Tex. Ins.Code §§ 1551.101–.114.

24. *Id.* §§ 1551.151–.159.

25. *Id.* §§ 1551.201–.206, .251–.259.

26. *Id.* §§ 1551.301–.324.

27. *Id.* § 1551.014.

28. *Id.* § 1551.354.

29. *See Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd.,* 53 S.W.3d 310, 316 (Tex.2001) (noting that we consider an agency's interpretation of its own powers "if that interpretation is reasonable and not inconsistent with the statute").

exclusive jurisdiction must be granted by the Legislature; an agency cannot grant exclusive jurisdiction to itself.[30] But when ERS adopted a plan providing for subrogation, it specified no administrative remedies except that "the Plan may deduct from any pending or subsequent claim made under the Plan any amounts the Participant owes the Plan." Deducting subrogation from a benefits payment falls within ERS's exclusive jurisdiction; pursuing money damages to reimburse benefits already paid is a different matter.

Moreover, ERS's plan allowed it to assert subrogation against third parties "independent of the Participant." So rather than suing the Duenezes after their settlement, ERS could have sued the convenience store independently or intervened in *Duenez II.*[31] If ERS has exclusive jurisdiction of subrogation, then it could have demanded that the Dram Shop claim in *Duenez II* be dismissed for exhaustion of administrative remedies. We do not think the Legislature intended ERS to handle administratively every tort suit involving injured state employees.

Finally, we must avoid constitutionally suspect constructions of the Act if we can.[32] Relegating common-law claims to administrative remedies implicates the Texas Constitution's open-courts provision.[33] We have rejected open-courts complaints when a grant of exclusive jurisdiction involved claims that did not exist at common law.[34] But subrogation existed at common law long before ERS was created.[35] We decline to construe the Act to relegate subrogation defendants to administrative procedures before ERS, *especially when the claimant is ERS itself,* and then have judicial access limited to substantial-evidence review.[36]

It is true that the Act provides for exclusive jurisdiction of questions "relating" to payment of claims, which arguably extends far beyond paying claims alone. But immediate problems arise if we construe the Act that broadly. Large insurance or retirement payments may attract the attention of creditors, former spouses, competing heirs, or tax collectors. The commercial, marital, probate, and tax questions in such cases could all arguably "relate" to the underlying payment of a claim, but nothing in the Act suggests the Legislature intended ERS to exercise expertise in all these areas. ERS's expertise is in deciding payment of benefits, and we should not read "relating to" more broadly than that.

While we reject ERS's claim of exclusive jurisdiction over its own subrogation claims, that does not mean its administrative procedures could never play a role. One of several declarations the Duenezes

---

**30.** *See id.* ("An agency may not, however, exercise what is effectively a new power, or a power contradictory to the statute, on the theory that such a power is expedient for administrative purposes.").

**31.** *Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.,* 236 S.W.3d 765, 774 (Tex.2007) ("Contractual (or conventional) subrogation is created by an agreement or contract that grants the right to pursue reimbursement from a third party in exchange for payment of a loss . . . ."); *see, e.g., Tex. Mut. Ins. Co. v. Ledbetter,* 251 S.W.3d 31, 34 (Tex.2008); *Estrada v. Dillon,* 44 S.W.3d 558, 560 (Tex.2001); *Guillot v. Hix,* 838 S.W.2d 230, 232 (Tex.1992).

**32.** *City of Houston v. Clark,* 197 S.W.3d 314, 320 (Tex.2006); *Marcus Cable Assocs. v. Krohn,* 90 S.W.3d 697, 706 (Tex.2002).

**33.** *See* TEX. CONST. art I, § 13.

**34.** *Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 227 (Tex.2002).

**35.** *See, e.g., Faires v. Cockrill,* 88 Tex. 428, 31 S.W. 190, 194 (1895) ("Perhaps the courts of no state have gone further in applying the doctrine of subrogation than has the court of this state.").

**36.** *See* TEX INS.CODE § 1551.359.

sought by counterclaim was a declaration that ERS "incorrectly determined that the amount owed" by the Duenezes was $113,174.76 for nursing services the trial court ordered ERS to pay. Had this declaration challenged the amounts ERS paid to health-care providers (a matter within its expertise), the doctrine of primary jurisdiction would require such a claim to be abated and referred to ERS for an initial determination.[37] But the Duenezes' pleadings and briefs do not challenge the *amount* of these charges, but whether they *owe* them.[38] As the question is not whether ERS should have paid these benefits but whether the Duenezes should reimburse them, that is a subrogation question outside ERS's exclusive jurisdiction.

Nor, of course, do we reject ERS's claim for subrogation on the merits. ERS has apparently never pursued a subrogation claim either administratively or in court, perhaps because all members other than the Duenezes have complied with the Plan's subrogation provisions. As we have noted with respect to workers' compensation cases, "[a] carrier's subrogation claim should hardly ever be contested" as "claimants should already know how much they have received in benefits."[39] The

only defenses the Duenezes have raised to subrogation appear to be equitable defenses barred by the Plan under which they accepted benefits.[40] But none of that provides exclusive jurisdiction for ERS to decide its own subrogation claims.

The dissenting opinions agree there is something odd about the procedural posture of this case, but fail to recognize that ERS and its agent Blue Cross had no other choice. Had no benefits been paid, ERS could have effectively invoked its administrative procedures by simply withholding payment and requiring the Duenezes or their providers to file administrative claims for them. But once the benefits were paid, ERS had no choice but to seek reimbursement in court.

Construing the Act as a whole,[41] we conclude that the court of appeals' opinion rejecting ERS's claim of exclusive jurisdiction here does not conflict with this Court's opinion in *Duenez I* affirming ERS's exclusive jurisdiction of questions relating to payment of benefits. Accordingly, without argument,[42] we dismiss the petition for want of jurisdiction.

Justice HECHT delivered a dissenting opinion.

---

**37.** See *In re Sw. Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex.2007); *David McDavid Nissan*, 84 S.W.3d at 221 (holding courts should defer to administrative agencies under doctrine of primary jurisdiction when "(1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations").

**38.** We disagree with JUSTICE WAINWRIGHT's interpretation that the Duenezes are "directly attack[ing] ERS's decision to pay, or to decide not to pay" these benefits. 288 S.W.3d at 917. To the contrary, the Duenezes *insisted* that ERS pay these charges, and got the trial court to order ERS to do so.

**39.** *Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 37 (Tex.2008).

**40.** The ERS plan provided for subrogation "even though the third-party payment does not compensate the Participant for his or her whole loss," and that it "shall not be defeated by any so-called 'Fund Doctrine,' or 'Common Fund Doctrine.'" See *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 650 (Tex.2007) ("We agree with those courts holding that contract-based subrogation rights should be governed by the parties' express agreement and not invalidated by equitable considerations that might control by default in the absence of an agreement.").

**41.** TEX. GOV'T CODE § 311.021(2).

**42.** *See* TEX.R.APP. P. 59.1.

Justice WAINWRIGHT delivered a dissenting opinion, in which Justice JOHNSON joined.

Justice HECHT, dissenting.

Strange as it may seem, a state agency has sued itself to have its own jurisdiction declared exclusive, then moved to dismiss its action for want of jurisdiction, and now complains that the trial court denied its motion. To be clear: the agency does not contend that it should have won a declaratory judgment; it contends that its motion to dismiss *its own action* should have been granted. One may ask: why doesn't the agency simply take a nonsuit? If the agency is trying to obtain judicial approval of its claim of exclusive jurisdiction, the plan has backfired: the court of appeals held against the agency.[1] But a party's dispute with itself is nonjusticiable.

> There is much argument with citation of many cases to establish the long-recognized general principle that no person may sue himself. Properly understood the general principle is sound, for courts only adjudicate justiciable controversies. They do not engage in the academic pastime of rendering judgments in favor of persons against themselves.[2]

The court of appeals should have dismissed this interlocutory appeal.[3]

The Court's opinion does not clearly set out the peculiar posture of this case, which is so unusual that it must be carefully understood. The Employees Retirement System of Texas (ERS), a state agency,[4] provided health and accident benefits to Xavier Duenez, a state employee,[5] under a plan administered by Blue Cross and Blue Shield of Texas (BCBST). The plan paid for health care for Duenez's daughter Ashley, who along with her parents and siblings was injured in a car accident with a drunk driver. The driver had purchased beer at a convenience store just before the accident, and Duenez and his wife Irene sued the store owner under the Texas Dram Shop Act.[6] The Duenezes obtained a substantial judgment, and BCBST requested a partial assignment to protect ERS's right of subrogation. When the Duenezes refused, BCBST sued them as well as ERS, alleging that ERS was "a person whose joinder as a party to this litigation is needed for just adjudication." BCBST requested the following relief: "[a] declaration of the respective rights and other legal relations of ERS, BCBST as ERS' administering firm and manager, Xavier Duenez, Irene Duenez, and Ashley Duenez"; "[a] declaration that ERS/BCBST is entitled to have [the Duenezes] execute and deliver to ERS/BCBST . . . an

1. 221 S.W.3d 809 (Tex.App.-Corpus Christi–Edinburg 2007).

2. *United States v. Interstate Commerce Comm'n*, 337 U.S. 426, 430, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949) (quoted in *United States Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 612 (Tex.2008) (Green, J., joined by Jefferson, C.J., and Johnson, J., dissenting)).

3. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445–446 (Tex.1993) (standing, as a matter of subject matter jurisdiction, may be raised for the first time on appeal).

4. Article XVI, § 67(b)(2) of the Texas Constitution requires the Legislature to "establish by law an Employees Retirement System of Texas to provide benefits for officers and employees of the state". The Legislature has done so in chapters 811–815 of the Texas Government Code. Section 811.003 provides that "[t]he retirement system is a public entity."

5. Benefits were provided under the Texas Employees Uniform Group Insurance Benefits Act, Act of April 21, 1975, 64th Leg., R.S., ch. 79, 1975 Tex. Gen. Laws 208, as amended, formerly Tex. Ins.Code art. 3.50–2, recodified as the Texas Employees Group Benefits Act, now Tex. Ins.Code §§ 1551.001–.407.

6. Tex. Alco. Bev.Code § 2.02.

appropriate partial assignment"; attorney fees; and costs. ERS answered with a general denial, characterizing itself as "Defendant ERS".

The case languished for several years while the Dram Shop case was on appeal, until the Duenezes settled their claims for their injuries and Ashley's for $35 million.[7] The Duenezes then filed a pleading entitled "cross claim and third party action", "seeking a judicial declaration that [the Duenezes] owe no subrogation to Blue Cross/Blue Shield", or alternatively, "that any subrogation to which Plaintiff is entitled to [is] subject to the common fund doctrine". The pleading did not mention ERS. ERS filed an amended answer to BCBST's petition and "motion to dismiss for lack of jurisdiction", asserting that its sovereign immunity from suit had not been waived, that by statute it had exclusive jurisdiction to determine its right to subrogation,[8] and that administrative remedies had not been exhausted. ERS sought relief only against BCBST—that the court "dismiss the Plaintiff's Petition" and "that Plaintiff take nothing". ERS did not mention the Duenezes' cross-claim.

The Duenezes amended their cross-claim to seek the identical relief against ERS as well as BCBST, and to request abatement of any administrative proceedings before ERS, pending conclusion of the lawsuit. ERS responded to this pleading only by reasserting its claim to exclusive jurisdiction, not by moving to dismiss the Duenezes' cross-claim. BCBST amended its petition to request declarations:

- "that ERS has exclusive jurisdiction ... to determine whether the group health care coverages and benefits provided by ERS ... with administrative support from Blue Cross are or are not subject to ... any ... legal or equitable doctrine";
- "that the statutory remedies provided to Xavier Duenez with respect to ERS' decisions regarding subrogation for benefits paid to Xavier Duenez are exclusive";
- "that ERS/Blue Cross is entitled to recover its full subrogation interest from Defendants"; and
- "of the respective rights and other legal relations of ERS, Blue Cross as ERS' administering firm, Xavier Duenez, Irene Duenez, and Ashley Duenez".

BCBST added a request for "[m]onetary judgment in favor of ERS/Blue Cross for the full amount of the ERS subrogation interest". The amount of that interest, as asserted in letters from ERS to the Duenezes' counsel, was $295,105.57.[9]

At the hearing on ERS's motion to dismiss, the trial court was puzzled why BCBST would sue yet assert that the only remedy was administrative. The court asked BCBST's counsel: "If you thought you had administrative relief, why did you file a case in District Court?" Though counsel's answer was not entirely clear, he said this:

When we found out about [the judgment in the Dram Shop case], we thought, what is the best way to preserve whatever right we have, whatever subrogation right we have. They [i.e., the Duenezes] had already indicated to the ERS that they didn't think ERS had jurisdiction

---

**7.** According to the Duenezes, settlement funds were allocated $12,644,000 to Ashley, $6,104,000 to Irene, $3,052,000 to Xavier, and $13,200,000 to attorney fees and expenses. The judgment for the claims of two other Duenez family members injured in the accident was reversed and remanded by this Court in *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680 (Tex.2007).

**8.** ERS cited Tex. Ins.Code § 1551.352.

**9.** ERS also asserted that it overpaid $113,174.76 in benefits that Duenez improperly claimed.

over anything, and it became clear to us that we were not going to be able to get their attention proceeding through administrative proceedings only. Therefore, we decided the way to preserve whatever subrogation interest there is— they say there really isn't one, we say there's a dollar-for-dollar one—the best way to preserve that is to file a lawsuit. . . . Now, ERS did not join in that lawsuit, we, Blue Cross, as the administering firm, filed what we, as Blue Cross, thought would be the best thing to do at the time. Now, for the record today, we are on board with ERS in terms of the ERS exclusive authority. . . .

The trial court denied ERS's motion to dismiss and ordered that administrative proceedings be abated.

The court of appeals recognized that BCBST and ERS have identical interests in this case:

Although ERS is named as a defendant by BCBS's live petition, ERS is a defendant in name only. ERS is not adverse to BCBS's claims. In fact, BCBS's claims have been pled for the express benefit of ERS. . . . Not only are the parties not adverse to each other, they also have an ongoing agency relationship controlled by statute. . . .

BCBS brings its lawsuit in its capacity "as ERS's administrating firm"—as an agent for ERS. In addition, ERS maintains on appeal that BCBS has no right or interest in the settlement proceeds, a contention that BCBS has not contested. . . . Based on its pleadings, it is unclear why BCBS named ERS as a defendant.

ERS moved to dismiss this lawsuit. The trial court denied its request. In this appeal, ERS argues that it has exclusive jurisdiction over subrogation disputes, including the subrogation claim filed by BCBS on its behalf. BCBS has not filed an appellate brief with this Court. It is worth noting, however, that BCBS's live petition requests from the district court, in the alternative to a money judgment, "[a] declaration that ERS has primary jurisdiction and authority" over the parties' subrogation dispute. It therefore appears that the interests of BCBS and ERS are fully aligned in this litigation, even though BCBS has named ERS as a defendant.[10]

The court of appeals nevertheless proceeded to tackle the issue of ERS's statutory authority because ERS and the Duenezes disagree. But ERS never moved to dismiss the Duenezes' cross-claim. ERS's motion to dismiss was expressly directed at BCBST's suit. The Duenezes certainly have no standing to support the trial court's jurisdiction over BCBST's suit. Were BCBST's suit dismissed, the Duenezes claim would be unaffected unless they were somehow in privity with BCBST, and they are not. To be sure, the Duenezes are interested in the extent of ERS's authority to decide subrogation issues, but they are no more interested in a dispute between BCBST and ERS than an amicus curiae would be. Indeed, it would be to the Duenezes' benefit if BCBST's suit were dismissed—including its claim against the Duenezes for $295,105.57, attorney fees, and costs.

ERS's interlocutory appeal from the trial court's order denying its motion to dismiss BCBST's suit raised no justiciable issue. We should grant ERS's petition for review, vacate the court of appeals' judgment, and dismiss the appeal.[11] Because

**10.** 221 S.W.3d 809, 812 (Tex.App.-Corpus Christi–Edinburg 2007) (citations and footnote omitted).

**11.** *See New York Underwriters Ins. Co. v. Sanchez,* 799 S.W.2d 677, 679 (Tex.1990) (per curiam) (reversing the court of appeals' judgment and rendering judgment dismissing the

the Court does not do so, I respectfully dissent.

Justice WAINWRIGHT, joined by Justice JOHNSON, dissenting.

A drunk driver injured the Duenezes in an automobile accident. The Employees Retirement System of Texas (ERS) benefits plan paid approximately $400,000 in medical benefits to the family. ERS then sought to recover the benefits it paid to the Duenezes after they recovered $35 million from the tortfeasor who caused the injuries. ERS's right to seek reimbursement of the medical benefits paid arises by virtue of contractual subrogation rights in the benefits plan. The question in this case is a narrow one: Is the Duenezes' dispute of ERS's subrogation claim subject to the exclusive statutory jurisdiction of ERS to determine whether to pay "claims" under the plan and to decide issues "relating to" the payment of claims? I would hold that the statute and benefits plan vest ERS with exclusive jurisdiction over this dispute. Because the Court does not, I respectfully dissent.

## I. Factual and Procedural Background

Xavier Duenez, a state employee, applied for benefits under ERS's HealthSelect of Texas Managed Care Plan (the Plan) for injuries he and his family sustained in an automobile accident with a drunk driver. As administrator of the Plan, Blue Cross Blue Shield of Texas (BCBS) certified that the requested care was covered and began paying benefits.[1] BCBS ultimately paid the Duenezes approximately $400,000 in benefits before the Duenezes changed insurers.

While BCBS was paying benefits to the Duenezes under the Plan, the Duenezes sued to recover damages for the injuries sustained in the accident and obtained a $35 million settlement from the tortfeasor.[2] The executive director of ERS sent the Duenezes' attorney a letter asserting a right to recoupment of approximately $400,000—$300,000 for subrogation claimed and a little over $100,000 for overpayment of medical benefits. It appears from the record that the approximately $100,000 in improperly paid benefits at issue here was also the subject of *Duenez I*, in which we held that ERS has exclusive jurisdiction over coverage decisions. 201

appeal for lack of jurisdiction because the trial court had not rendered a final judgment) (citing *Long v. Humble Oil & Refining Co.,* 380 S.W.2d 554, 555 (Tex.1964) (per curiam)); *see also Brooks v. Northglen Ass'n,* 141 S.W.3d 158, 164 (Tex.2004); *Brown v. Todd,* 53 S.W.3d 297, 306 (Tex.2001).

1. After initially certifying coverage, BCBS later informed the Duenezes that the care was not covered and that BCBS planned to discontinue paying benefits. *Blue Cross Blue Shield of Tex. v. Duenez (Duenez I),* 201 S.W.3d 674, 675 (Tex.2006). The Duenezes pursued a declaratory judgment that the care was covered. *Id.* We held that ERS has exclusive jurisdiction over coverage decisions and dismissed the case for want of jurisdiction. *Id.* at 676.

2. The Duenezes sued the drunk driver and the owner of the convenience store that sold the drunk driver alcohol on the day of the accident, obtaining a $35 million jury verdict that the court of appeals affirmed. *F.F.P. Operating Partners, L.P. v. Duenez,* 237 S.W.3d 680, 682–83 (Tex.2007) *(Duenez II).* While F.F.P.'s petition was pending before this Court, the Duenezes settled the claims of Xavier, Irene, and Ashley Duenez. *Id.* We reversed and remanded the remaining claims of Carlos and Pablo Duenez for a new trial, holding that the trial court abused its discretion when it severed F.F.P.'s claims against the drunk driver and when it refused to submit jury questions to allow the jury to determine the drunk driver's proportionate responsibility. *Id.* at 683, 694.

S.W.3d at 676. Upon learning of the settlement, BCBS sued under both subrogation and overpayment theories to recoup the $400,000 it paid to the Duenezes in benefits under the Plan and for declaratory judgment. BCBS's subrogation rights in this case arise from a provision in article IX of the Plan, which entitles the Plan to reimbursement from the proceeds of a settlement for any benefits provided by the Plan.

BCBS joined ERS as a co-defendant in the lawsuit. *See* Tex.R. Civ. P. 39(a) (permitting joinder of a party necessary for the just adjudication of the lawsuit). ERS moved to dismiss the suit for want of jurisdiction, arguing it has exclusive jurisdiction over this subrogation dispute.[3] The trial court denied ERS's motion, and the court of appeals affirmed. 221 S.W.3d 809, 815.

## II. Employees Retirement System's Exclusive Jurisdiction

When the Legislature creates an administrative right that did not exist at common law, it can prescribe the procedures for pursuing and enforcing the right. *Igal v. Brightstar Info. Tech. Group, Inc.,* 250 S.W.3d 78, 92 (Tex.2008). The Legislature may confer exclusive jurisdiction on an administrative body to hear and decide disputes concerning the right created.[4] *Subaru of Am. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 221 (Tex.2002). When it does, a party must exhaust its administrative remedies before seeking review in a trial court. *Duenez I,* 201 S.W.3d at 675. Until a party exhausts its administrative remedies, Texas trial courts lack jurisdiction over the dispute and must dismiss claims within the agency's exclusive jurisdiction. *Id.; Thomas v. Long,* 207 S.W.3d 334, 340 (Tex.2006).

### A. Statutory Interpretation

Whether ERS has exclusive jurisdiction over this subrogation dispute is a matter of statutory interpretation, which we review de novo. *David McDavid Nissan,* 84 S.W.3d at 221; *Tex. Dep't. of Transp. v. Needham,* 82 S.W.3d 314, 318 (Tex.2002). The Texas Employees Group Benefits Act (the Act) gives ERS exclusive jurisdiction over "all questions relating to enrollment in or payment of a claim arising from . . . benefits provided" under the Plan. Tex. Ins.Code § 1551.352.[5] Neither party disputes that ERS paid medical benefits to the Duenezes in accordance with the Plan and has exclusive jurisdiction to determine the benefits to be paid.

The Plan also contractually governs subrogation. It provides as follows:

**3.** In *City of Corpus Christi v. Public Utility Commission,* we held that an agency's interpretation of a statute is entitled to deference if: (1) it is reasonable, and (2) it does not conflict with the statute's plain language. 51 S.W.3d 231, 261 (Tex.2001). In that case, although the Commission's interpretation allowed for over-collection of transition charges, we held that the Commission did not err. *Id.; see also State v. Pub. Util. Com'n,* 883 S.W.2d 190, 196 (Tex.1994) (holding, in a case about the PUC's authority to provide a remedy that the Legislature did not specifically include, that "the contemporaneous construction of a statute by the administrative agency charged with its enforcement is entitled to great weight").

**4.** Texas trial courts have "exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art. V, § 8.

**5.** When this case arose, the Act was codified at article 3.50–2 of the Texas Insurance Code. The Act was later repealed and recodified with non-substantive revisions. *See* Act of May 22, 2001, 77th Leg., R.S., ch. 1419, §§ 3, 31(b)(6), 2001 Tex. Gen. Laws 4153, 4209 (current version at Tex. Ins.Code § 1551). Citations are to the current version of the Act.

a. This provision applies when another party (person or organization) is or may be considered responsible for payment because of a Participant's injury or sickness for which benefits under the Plan have been provided.

b. To the extent of such services provided, the Plan is subrogated to all rights of recovery the Participant has[,] and the Plan may assert such rights independent of the Participant. Also, if the Participant has obtained or obtains a court judgment, settlement, arbitration, award, or other monetary recovery from another party, because of the injury or sickness, the Plan is entitled to reimbursement from the proceeds of recovery to the extent of benefits provided.

The Plan expressly provides ERS with a right to subrogation from the Duenezes' recovery obtained from a tortfeasor, whether through settlement or otherwise.

By disputing ERS's plea to the jurisdiction, the Duenezes contest ERS's jurisdiction to decide the right to recover both portions of the benefits paid through its subrogation rights. Their argument first depends on a holding that ERS does not have exclusive jurisdiction over the dispute of the alleged overpayment of $100,000 in medical benefits. This argument directly attacks ERS's decision to pay, or to decide not to pay, benefits under the Plan. The statute is clear that ERS has exclusive jurisdiction over "all questions relating to ... payment of a claim." *See Duenez I,* 201 S.W.3d at 676 (quoting Tex. Ins.Code § 1551.352). The Court agrees, but then determines that because the Duenezes are no longer insureds of the Plan, ERS loses its ability to enforce its decision regarding the payment of benefits. The Court's holding allows easy circumvention of ERS's exclusive jurisdiction to decide the very issue of payment of Plan benefits. Surely the Legislature did not intend that an insured would be able to avoid its reimbursement obligation by simply changing

insurers before ERS can seek subrogation. The Court's approach presents a simple roadmap for former Plan participants to circumvent the statute and improperly move to the courts claims to retain overpayments of medical benefits.

The Duenezes also argue that, because subrogation is collateral to payment and coverage under the Plan, ERS's assertion of exclusive jurisdiction to determine whether it should be reimbursed the $300,000 in legitimate benefits paid pursuant to its contractual subrogation rights is not related to payment of a claim. *See, e.g., Fortis Benefits v. Cantu,* 234 S.W.3d 642, 644 (Tex.2007) (involving a subrogation dispute in which coverage was not disputed); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 213 (Tex. 2003) (same).

This point raises a question of the scope of the legislative grant of exclusive authority. The statute's grant of jurisdiction over "all questions relating to ... payment of a claim" is broader than the Duenezes argue and the Court holds. In interpreting a statute, we "give words their ordinary meaning." *Geters v. Eagle Ins. Co.,* 834 S.W.2d 49, 50 (Tex.1992); *see also In re Tex. Dep't of Family & Protective Servs.,* 210 S.W.3d 609, 612 (Tex. 2006). In this case, the ordinary meaning comports with the accepted legal meaning, in that both definitions would only require the matter to have some connection with payment. *See* Webster's New Universal Unabridged Dictionary 1626 (1st ed.1996) (defining "relate" as "to bring into or establish association, connection, or relationship"); *see also In re Morrison,* 555 F.3d 473, 479 (5th Cir.2009) (defining bankruptcy courts' jurisdiction over cases related to the bankruptcy estate). The Legislature granted ERS's executive director exclusive authority to determine questions that have a connection or relationship to

payment of a claim for benefits under the Plan—a definition that clearly extends beyond merely determining the actual payment of a claim. *See* § 1551.352.

We are mindful that the Legislature enacted a comprehensive regulatory scheme to govern health insurance for state employees. *See* TEX. INS.CODE § 1551.001, *et seq.* Its expressly stated purposes are both to improve the state's relations with its employees and to "provide uniformity in life, accident, and health benefit coverages." § 1551.002. The statute grants the Board of Trustees broad powers to "implement this chapter and its purposes." § 1551.052. Because this case relates to the recoupment of benefits paid under the Plan, I believe it falls within the broad scheme created by the Legislature to "provide uniformity."

In addition, ERS asserts its claim for subrogation in this case alongside a claim for overpayment of benefits, over which ERS would clearly have jurisdiction as a "question relating to ... payment of a claim." ERS will have to parse the benefits paid, first by determining how much of the benefits were overpaid, which is clearly within ERS's jurisdiction, and then determining whether the Duenezes owe subrogation on the remaining amount. When two claims are so intertwined, it would not only be inefficient, but also against the Legislature's goal of promoting uniformity, to allow ERS to exercise its exclusive jurisdiction over part of the dispute and the trial court to decide the remainder, perhaps changing or nullifying ERS's payment decisions. This is untenable. Courts have the authority to change ERS's decisions, but only on appeal from ERS's final decision under a substantial evidence scope of review. TEX. GOV'T CODE §§ 2001.171, .174.

To interpret this provision as the Duenezes suggest would nullify a portion of the statute. *See In re Caballero,* 272 S.W.3d 595, 600 (Tex.2008); *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue,* 271 S.W.3d 238, 256 (Tex.2008). The statute grants exclusive authority to determine "all questions relating to ... payment of a claim arising from ... benefits provided under this chapter." § 1551.352. This statutory language encompasses more than the payment of benefits-it encompasses payment of *a claim arising from* benefits provided.

Subrogation relates to the payment of a claim. *See Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.,* 236 S.W.3d 765, 774 (Tex.2007) (recognizing that subrogation depends on payment of a loss); *Fortis Benefits,* 234 S.W.3d at 644; *Argonaut Ins. Co. v. Baker,* 87 S.W.3d 526, 530 (Tex. 2002) (recognizing that a statutory provision requiring employees to reimburse insurance carriers for payments made to the employees is a subrogation provision); *Medina v. Herrera,* 927 S.W.2d 597, 604 (Tex.1996) ("Generally, an insurer paying a claim under a policy becomes equitably subrogated to any cause of action the insured may have against a third party responsible for the injury."). Subrogation arises from and depends on payment of a loss or debt and is limited to the amount of payments made by the subrogee to the subrogor. *Mid–Continent,* 236 S.W.3d at 774; *Argonaut,* 87 S.W.3d at 530. In other words, subrogation determines who ultimately pays the claim-ERS or the third party, such as the tortfeasor in this case. Whether the payment comes from the Plan or a plan participant's recovery should be ERS's initial decision to make.

Because subrogation relates to payment of the Plan participants' claims, contractual subrogation claims under the Plan should fall within ERS's exclusive jurisdiction. TEX. INS.CODE § 1551.352. The language of the statute governs. *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625 (Tex.2008); *Hogue,* 271 S.W.3d at 256.

The Court seems to suggest that BCBS and ERS colluded on a plan to sue in court and then seek dismissal for lack of jurisdiction. Nothing in the record suggests that ERS and BCBS had such a plan, and nothing in the Plan or statute requires a lawsuit as a predicate to administrative subrogation. Even if BCBS made a litigation misstep by bringing its claim in a court of law and joining ERS as a defendant, BCBS's misstep does not mean that ERS demanded dismissal of "its own claim," as the Court asserts. 288 S.W.3d at 906. And such a misstep does not change the language of the statutes vesting ERS with exclusive authority to adjudicate matters relating to payment of claims or the language of the health care plan under which the Duenezes received hundreds of thousands of dollars.

## B. Exercise of Jurisdiction

Even if a statute appears to grant an agency exclusive jurisdiction over certain claims, such jurisdiction may be limited if the agency lacks procedural mechanisms to resolve the claims and the agency is unable to award monetary damages. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207–08 (Tex.2002). This indicates that the Legislature did not intend to grant exclusive jurisdiction over a certain type of claim. *Id.* Although I believe the plain meaning of the ERS statute grants exclusive jurisdiction quite broadly, the effect would be tempered by further analysis. For example, we held in *Butnaru* that the Motor Vehicle Board's exclusive jurisdiction did not extend to claims for tortious interference and declaratory judgment due to: (1) the Motor Vehicle Code's failure "to establish any procedure through which the Board may resolve [the claims]," and (2) "the Board's inability to award monetary damages." *Id.* at 207–08.

The jurisdiction of the Motor Vehicle Board at issue in *Butnaru* extended to

"Code-based claims," such as the denial of an application for a dealership. *Id.* at 207. The plaintiffs asserted a tort claim that would have to be proven under the common law. *Id.* at 208. We held that, because the types of claims asserted and the damages sought were so unlike the types of cases the Board usually heard, nothing in the statutory scheme suggested that the Legislature intended to replace common law remedies with administrative remedies. *Id.* (citing *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 18 (Tex.2000)). Whether ERS has the capability to resolve the types of claims asserted bears on the scope of the legislative grant of jurisdiction.

In this case, the Plan creates the subrogation claim asserted by ERS, which arises from ERS's payment of benefits to the Duenezes. *See Fortis Benefits*, 234 S.W.3d at 647 (emphasizing that "the policy declares the parties' rights and obligations"). The Plan is within ERS's particular expertise. This contrasts with *Butnaru*, where two independent parties unrelated to the agency sued in an agency proceeding based on substantive tort law. On the other hand, probate, marital, and tax questions, which the Court fears would also fall within ERS's exclusive jurisdiction under our definition, would be more similar to the situation in *Butnaru*. ERS has not attempted to exercise exclusive jurisdiction over such collateral matters, but if it did, it would be clear that the Legislature did not intend to extend exclusive jurisdiction that far. *See Butnaru*, 84 S.W.3d at 208.

It is true that ERS has not adopted substantive rules specifically governing the resolution of administrative subrogation proceedings; however, this appears to be the first such subrogation dispute a Plan beneficiary has pursued through the courts. ERS presumably determines the

majority of subrogation claims through the administrative process without dispute. Importantly, the enabling statute grants ERS the authority to adopt rules "it considers necessary to implement this chapter and its purposes," including the rules governing subrogation proceedings. *See* § 1551.052. The attorney general points out that the Legislature tied ERS's exclusive jurisdiction to "a pervasive regulatory scheme," thus arguing that the lack of an express provision for subrogation does not limit ERS's jurisdiction. *See In re Entergy Corp.*, 142 S.W.3d 316, 321–22 (Tex. 2004). I agree.

As the court of appeals and the Court note, the lack of substantive guidance on subrogation disputes stands in contrast to other matters within ERS's exclusive jurisdiction, such as eligibility for benefits and coverage, both covered by the Act. 221 S.W.3d at 815; §§ 1551.101–.159, .202–.206. However, ERS's subrogation rights are available only under the Plan, not under the Act. The substantive right to subrogation and the obligation to reimburse ERS are created by the Plan, and the agency and the Plan beneficiary are both stakeholders in the dispute. In fact, no equitable defenses apply when subrogation rights arise from a contract, as they do in this case. *Fortis Benefits*, 234 S.W.3d at 647. Rather, "the policy declares the parties' rights and obligations." *Id.* Hence,

the dispute is much different from the one addressed in *Butnaru.* *See* 84 S.W.3d at 206.

Further, unlike the Motor Vehicle Code at issue in *Butnaru,* the Act provides a general framework for ERS to resolve contested subrogation issues. The statute directs that the executive director make all determinations over which he has jurisdiction, which, in this case, came in the form of a letter to the Duenezes. § 1551.352. The participant then has the opportunity to appeal the determination to the ERS Board of Trustees. § 1551.351(d). Here, the Duenezes appealed to the Board of Trustees;[6] however, the trial court abated the agency proceeding pending a determination of its jurisdiction. Had the appeal proceeded, the Duenezes would have been entitled to a contested case hearing by the ERS Board of Trustees with the opportunity to present defenses. *See* Tex. Ins. Code §§ 1551.351(d), .355(d); *see also* Tex. Gov't Code §§ 2001.051–.103 (providing minimum standards of uniform procedure for administrative hearings in contested cases). If still dissatisfied after the appeal, the Duenezes, having exhausted all of their administrative remedies, would then be free to file suit in a trial court in Travis County.[7] *See* Tex. Ins.Code § 1551 .359 ("A person aggrieved by a final decision of the Employees Retirement System of Texas in a contested case . . . is entitled to

---

**6.** If the participant failed to file a timely appeal, his or her administrative remedies would similarly be exhausted. Just as an appeal to the Board of Trustees would qualify as a contested case, so too would the decision of a participant not to appeal. *See* Tex. Gov't Code § 2001.003(1) (" 'Contested case' means a proceeding . . . in which the legal rights, duties, or privileges of a party are to be determined by a state agency after *an opportunity* for adjudicative hearing." (emphasis added)); *see* 25 William V. Dorsaneo III, Texas Litigation Guide § 423.02 (2007). If the participant failed to appeal the determination of the executive director of ERS, such determination

must necessarily represent the final determination of the administrative agency. *See* § 2001.144. At that point, ERS would be able to enforce its judgment in the trial court. *See* § 2001.202 (stating that the attorney general may, at the request of ERS, represent its interest in. a trial court to "compel compliance with the final order," but that representation by the attorney general "is in addition to any other remedy provided by law").

**7.** If the Board of Trustees finds in favor of the participant, ERS could request that the attorney general bring an action in trial court on its behalf. *See* Tex Gov't Code § 2001.202.

judicial review of the decision."); Tex. Gov't Code § 2001.171 (providing that a person who has exhausted all administrative remedies available within an agency and is aggrieved by a final decision in a contested case is entitled to judicial review); *Cash. Am. Int'l*, 35 S.W.3d at 15 ("When the Legislature vests exclusive jurisdiction in an agency, exhaustion of administrative remedies is required.").[8] The procedures through which ERS resolves other disputes based on the Plan are already in place and can accommodate the subrogation dispute at issue here.

Second, in *Butnaru*, the plaintiffs sought monetary damages based on the common law claim of tortious interference and a declaratory judgment for a breach of contract claim. 84 S.W.3d at 206. We held that the agency's inability to award monetary damages or a declaratory judgment undermined the argument that its jurisdiction extended to those claims. *Id.* at 206–07. Unlike the agency in *Butnaru*, ERS has the authority to obtain reimbursement of funds, the damages sought here. *See* Tex. Ins.Code § 1551.351(a)-(b) (allowing reimbursement of funds obtained through fraudulent or quasi-fraudulent means). The remedies provided under the Act "are the exclusive remedies available to an employee, participant, annuitant, or dependant." *Id.* § 1551.014; *see Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303, 307 (Tex.1974) ("When the Legislature specifies a particular extent of insurance coverage, any attempt to void or narrow such coverage is improper and ineffective."). Conspicuously absent from that list of parties is ERS. ERS has the authority to bring an action under the statute and then to enforce that judgment in the trial court. *See, e.g.*, Tex. Ins.Code § 1551.351(a); Tex.

Gov't Code § 2001.202. Therefore, ERS is not limited exclusively to the remedies specifically provided in section 1551 and has the authority to fashion appropriate procedures and remedies to be used in subrogation disputes. Tex. Ins.Code §§ 1551.014, .052.

The Court relies on its assertion that ERS's procedures were never designed for collecting a claim. 288 S.W.3d at 909. However, ERS must have the procedures for recovering money already paid in benefits, because the statute explicitly allows them to do so in another context. § 1551.351(b)(3), (5) (quasi-fraudulent conduct). After receiving a final judgment in the administrative proceeding, ERS would enforce its judgment in the trial court in the same manner it would enforce the recovery of payments made based on quasi-fraudulent conduct or any other administrative decision. *See* Tex. Gov't Code § 2001.202 (stating that the attorney general may, at the request of ERS, represent its interest in trial court to "compel compliance with the final order," but that representation by the attorney general "is in addition to any other remedy provided by law").

### III. Conclusion

For the reasons discussed above, I conclude that the Legislature has granted ERS exclusive jurisdiction over this subrogation dispute. *In re Entergy Corp.*, 142 S.W.3d at 322. I would reverse the court of appeals' judgment and dismiss the case for want of jurisdiction. Tex.R.App. P. 59.1.

---

8. Clearly, then, filing suit is not a prerequisite to exhausting administrative remedies, as the Court suggests. 288 S.W.3d at 906. Suit would be filed only after the administrative process has concluded, either by the Duenezes, unhappy with the result, or by ERS, to enforce the decision of the administrative body.