STATE of Texas, Petitioner,

v.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND and Colonial American Casualty and Surety Company, Respondents.

No. 04–0180.

Supreme Court of Texas.

May 4, 2007.

Greg Abbott, Atty. Gen., Barry Ross McBee, Edward D. Burbach, Rafael Edward Cruz, Don Wayne Cruse Jr., Assistant Solicitor General, Susan Desmarais Bonnen, Rodney D. Parrott, Kent C. Sullivan, First Assistant Attorney General, David William Nance, Austin, for Petitioner.

James K. Peden III, Toni Scott Reed, Strasburger & Price, L.L.P., Dallas, George C. Baldwin, Ford Nassen & Baldwin, P.C., Austin, for Respondent.

PER CURIAM.

In 1999, Sedona Contracting, Inc., contracted to build a research and technology center for the Texas Department of Transportation ("TxDOT") and purchased an $11.02 million performance bond with sureties Fidelity & Deposit Co. and Colonial American Casualty & Surety Co. (collectively "Fidelity"). When Sedona defaulted, TxDOT demanded that Fidelity perform under the bond. Fidelity executed a "Takeover Agreement" with TxDOT and hired Faulkner Construction to complete the job. While Faulkner finished the project, cost-related disputes arose between Fidelity and TxDOT, with Fidelity asserting multiple claims for additional money through TxDOT's administrative dispute-resolution system. Before Fidelity pursued this administrative process, TxDOT sued Fidelity, claiming that Fidelity had failed to perform under its performance bond and that Sedona's default had inflicted economic losses on the State. Fidelity counterclaimed, arguing that TxDOT, not Sedona, defaulted on the original contract and the subsequent Takeover Agreement.

TxDOT filed a plea to the jurisdiction, arguing sovereign immunity and Fidelity's failure to exhaust administrative remedies. The trial court denied TxDOT's plea to the jurisdiction and granted Fidelity summary judgment on its motion that TxDOT had waived immunity. The court of appeals affirmed, holding that (1) TxDOT waived immunity against Fidelity's counterclaims by filing suit, and (2) the dispute-resolution process in Texas Transportation Code section 201.112 applied only to contracts for construction of bridges and roads, not buildings. 127 S.W.3d 339, 347.

■ Since the court of appeals' decision, we have issued *Reata Construction Corp. v. City of Dallas*, which permits "adverse parties to assert, as an offset, claims germane to, connected with, and properly defensive to those asserted by the governmental entity." 197 S.W.3d 371, 377 (Tex. 2006).[1] TxDOT initiated this litigation by

---

1. Fidelity argues that this Court lacks conflicts jurisdiction over this interlocutory appeal because *Reata* was decided after the court of appeals' decision below. *See* Tex. Gov't Code §§ 22.225(b)—(c); *Barber v. Inter-* *coast Jobbers & Brokers,* 417 S.W.2d 154, 156–57 (Tex.1967). We reject this argument because the court of appeals' decision below conflicted with: (1) prior courts of appeals' decisions, *e.g., State v. Riemer,* 94 S.W.3d 103,

suing for damages on the performance bond, so TxDOT has no immunity against counterclaims sufficiently related to the State's bond-enforcement claim. *See Standard Accident Ins. Co. v. Knox,* 144 Tex. 296, 184 S.W.2d 612, 616 (1944) (stating that an action to collect on a performance bond necessarily requires a court to construe the bond with any underlying contracts). TxDOT retains immunity from suit, however, to the extent that Fidelity's damages exceed amounts offsetting TxDOT's monetary recovery. *See City of Irving v. Inform Constr., Inc.,* 201 S.W.3d 693, 694 (Tex.2006) (per curiam). The court of appeals' decision expressly declined "to sift through the claims of each party and specify which of Fidelity's claims arise from the State's suit," 127 S.W.3d at 345, and accordingly also did not restrict Fidelity's counterclaims to a mere offset of TxDOT's claims. In light of *Reata,* a court must both specify the claims that arise from the State's suit and limit any recovery to an offset.

■ TxDOT also argues that the trial court lacks jurisdiction because Fidelity failed to exhaust TxDOT's dispute-resolution process. When the Legislature vests exclusive jurisdiction in an administrative agency, trial courts have no jurisdiction over claims governed by the relevant statute until the administrative process is exhausted. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 221 (Tex.2002). The Transportation Code authorizes TxDOT to "establish procedures for the informal resolution of a claim arising out of a contract described by ... Chapter 223." TEX. TRANS. CODE § 201.112(a)(2); *see also* 43 TEX. ADMIN CODE § 9.2 (detailing the administrative procedures that TxDOT adopted). Chap-

ter 223 governs bids and contracts for "the improvement of a highway that is part of the state highway system," or for "materials used in the construction or maintenance of that highway." TEX. TRANSP. CODE § 223.001. The statute in effect when this litigation arose defined "highway" as including a "public road or part of a public road and a bridge, culvert, or other necessary structure related to a public road." *Id.* § 221.001(1). TxDOT argues that the catch-all phrase "other necessary structure related to a public road" includes facilities like the research and technology center, so TxDOT's dispute-resolution process provides the exclusive remedy for Fidelity's contract claims arising out of the construction of that facility. *See Tex. Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors, Inc.,* 92 S.W.3d 477, 484–85 (Tex.2002). We disagree.

■ First, "we construe statutes as written" by examining the plain and common meaning of the Legislature's words. *Alex Sheshunoff Mgmt. Servs. v. Johnson,* 209 S.W.3d 644, 652 (Tex.2006). It merits mention that the Legislature in 2005, *after* the court of appeals' decision below, expanded the definition of "highway" specifically to include "building." Act of May 30, 2005, 79th Leg., R. S., ch. 281, § 2.15, 2005 Tex. Gen. Laws 778, 788. That broader definition, however, is inapplicable here; the pertinent definition before this Court excludes "building." *See* TEX. GOV'T CODE § 311.022 ("A statute is presumed to be prospective in its operation unless expressly made retrospective."); *In re M.C.C.,* 187 S.W.3d 383, 384–85 (Tex.2006) (per curiam) (applying prior version of statute where later version was not expressly

110–11 (Tex.App.-Amarillo 2002, no pet.), and (2) the prior cases from this Court upon

which *Reata* relied, *see* 197 S.W.3d at 376–77.

made retroactive).[2] Second, we agree with Fidelity and the court of appeals that the canon of *ejusdem generis* applies: "when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation." *Hilco Elec. Coop. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex.2003). In the context of a bridge and a culvert, "other necessary structure related to a public road" is something that likewise pertains to the physical function of the road, such as a guard rail. Though important, perhaps even essential, to TxDOT's overall mission, a research and technology center is dissimilar in nature from a road-related structure like a bridge or culvert. Accordingly, it fails to meet the pre–2005 statutory definition of "highway" and thus falls outside the reach of TxDOT's dispute-resolution process. Because the Transportation Code's administrative remedies do not cover this construction contract, the trial court has subject-matter jurisdiction, and TxDOT "must participate in the litigation process as an ordinary litigant"—assuming the trial court deems Fidelity's claims "germane to, connected with, and properly defensive to" TxDOT's claims. *Reata*, 197 S.W.3d at 376–77.

Accordingly, without hearing oral argument, *see* Tex.R.App. P. 59.1, we grant TxDOT's petition for review, vacate the court of appeals' judgment, and remand to the trial court for further proceedings.

---

**2.** This Court has held that the general rule for prospective operation does not apply for a statutory amendment that is merely procedural or remedial, including an amendment vesting exclusive jurisdiction in an agency. *Subaru of Am.*, 84 S.W.3d at 222–23. The amendment at issue here, however, was not to the procedural section 201.112; rather, it was to the definition of "highway" in section 221.001(1). Because this definition affects all substantive provisions under the State Highway System subtitle, *see* Tex. Transp. Code §§ 221.001–250.001, its application is prospective, *see Subaru*, 84 S.W.3d at 219–20.