

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-21-00325-CV

**ISI CONTRACTING, INC.** and Guerra Construction,
Appellants

v.

Naomi **MARKHAM**; Carrie Markham; and Trevor Markham, Individually and as the
Administrator of the Estate of Joslyn Markham, Deceased,
Appellees

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2017CI01166
Honorable Antonia Arteaga, Judge Presiding

Opinion by:   Patricia O. Alvarez, Justice

Sitting:   Patricia O. Alvarez, Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: April 27, 2022

REVERSED AND RENDERED

In this interlocutory appeal, Appellants assert that they are highway repair contractors who complied with their contract documents, and under section 97.002 of the Civil Practice and Remedies Code, they are immune from liability for all of Appellees' claims. Appellants argue that the trial court erred when it denied their motions for summary judgment, and we agree. We reverse the trial court's judgment and render judgment dismissing all of Appellees' claims.

## BACKGROUND

In February 2015, eighteen-year-old Joslyn Markham was driving the family's pickup truck with Naomi, her older sister, as a passenger. While the truck was proceeding southbound on Highway 281 past Jones Maltsberger road, it veered to the right onto the shoulder and struck the guardrail. The truck rode up the guardrail, over a parapet, and then fell approximately forty feet where it landed inverted. Tragically, Joslyn was killed, and Naomi was seriously injured.

Naomi, her parents Carrie and Trevor Markham, and Trevor Markham as the administrator of Joslyn's estate (collectively the Markhams), sued the Texas Department of Transportation (TxDOT) for premises defect; ISI Contracting, Inc. for negligence and negligent undertaking; ISI and Guerra Construction for breach of contract (under a third-party beneficiary status); and all the defendants for "concerted wrongful conduct."

In their petition, the Markhams assert that months before their truck struck the guardrail, the guardrail had been damaged, and ISI and Guerra worked on that portion of the guardrail. The Markhams insist that ISI and Guerra replaced the guardrail at a height that was too low—in violation of TxDOT's established standards—and that lower height caused the pickup truck to ride up over the guardrail and allowed it to depart from the highway.

ISI and Guerra moved for summary judgment on multiple grounds including an affirmative defense under section 97.002. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002.

The trial court denied the motions for summary judgment, and ISI and Guerra bring this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(15).

ISI raises two issues: (1) ISI and Guerra were entitled to summary judgment against all the Markhams' claims, both tort and contract, based on their affirmative defense under section 97.002, and (2) in the alternative, ISI and Guerra were entitled to summary judgment against the

Markhams' breach of contract claims as third-party beneficiaries because the contracts expressly exclude third-party beneficiaries.

Guerra joins ISI's first two issues and adds, in the alternative, a third issue: Guerra was entitled to summary judgment against the Markhams' concert of action claims because concert of action is not a valid cause of action in this case.

We first address ISI and Guerra's arguments regarding their statutory affirmative defense.

### AFFIRMATIVE DEFENSE UNDER SECTION 97.002

#### A.    Parties' Arguments

On appeal, ISI and Guerra argue that, inter alia, they are shielded from liability against all the Markhams' claims, both tort and contract, by section 97.002.  Section 97.002 sets requirements for its applicability, and ISI and Guerra contend they meet them all: They are contractors who repaired part of the highway for TxDOT and their repairs were in compliance with the contract documents material to the guardrail repair.

The Markhams respond that section 97.002 does not apply for several reasons, including the following.  First, ISI's contract with TxDOT was for routine maintenance, not repairs.  Second, the guardrail is not part of the highway.  And third, even if guardrail repair is repair for purposes of section 97.002, ISI and Guerra's work was not in compliance with the contract documents.

Before we address the arguments, we recite the standard of review and applicable law.

#### B.    Standard of Review

"A person may appeal from an interlocutory order of a district court . . . that . . . grants or denies a motion for summary judgment filed by a contractor based on Section 97.002."  TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(15) (effective June 16, 2021); *see A.S. Horner, Inc. v. Navarrette*, No. 08-18-00044-CV, 2021 WL 1050063, at *1 (Tex. App.—El Paso Mar. 19, 2021,

no pet.) (granting a permissive interlocutory appeal under section 51.014(d)); *APAC-Tex., Inc. v. Beasley*, No. 09-13-00390-CV, 2014 WL 887266, at \*1 (Tex. App.—Beaumont Mar. 6, 2014, no pet.) (mem. op.) (same).

A party moving for traditional summary judgment bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

We review a trial court's ruling on a traditional motion for summary judgment de novo. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In our review, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citing *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)).

"[A] defendant who . . . conclusively establishes all the elements of an affirmative defense is entitled to summary judgment." *Bradshaw*, 457 S.W.3d at 79; *see Town of Dish v. Atmos Energy Corp.*, 519 S.W.3d 605, 608 (Tex. 2017).

## C.    Statutory Construction Principles

The contractors' first issue requires us to construe section 97.002, which we do using well-known principles of statutory construction. *See Colorado Cty. v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017) (citing *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)). "In construing statutes, we ascertain and give effect to the Legislature's intent as expressed by the language of the statute." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008); *accord City of Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex. 2010).

"To discern that intent, we begin with the statute's words." *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011); *accord City of Dallas*, 304 S.W.3d at 384. If the statute does not define a term or give it "a different or more precise definition [by its] use in the context of the statute," we use the term's common meaning. *TGS–NOPEC*, 340 S.W.3d at 439; *accord City of Dallas*, 304 S.W.3d at 384.

"To determine a statutory term's common, ordinary meaning, we typically look first to their dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities." *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017); *accord Colorado Cty.*, 510 S.W.3d at 448 (citing *TGS–NOPEC*, 340 S.W.3d at 441); *see also Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 131 (Tex. 2018) ("In many statutory-construction cases, the parties dispute the meaning of particular words or phrases, and we construe the statute by applying the terms' common, ordinary meaning unless the text supplies a different meaning or the common meaning leads to absurd results.").

"We further consider statutes as a whole rather than their isolated provisions." *TGS-NOPEC*, 340 S.W.3d at 439; *accord Shinogle v. Whitlock*, 596 S.W.3d 772, 776 (Tex. 2020).

Finally, to construe an unambiguous statute, we do not resort to extrinsic aids like legislative history. *Tex. Health*, 569 S.W.3d at 135 (recognizing "that section 311.023 of the Code Construction Act permits courts to consider a statute's legislative history 'whether or not the statute is considered ambiguous on its face,'" but adding that "[c]onstitutionally, it is the courts' responsibility to construe statutes, not the legislature's"); *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012).

**D.      TxDOT Contractor Immunity from Liability**

The statute we must construe is section 97.002; it reads in its entirety as follows:

> A contractor who constructs or repairs a highway, road, or street for the Texas Department of Transportation is not liable to a claimant for personal injury, property damage, or death arising from the performance of the construction or repair if, at the time of the personal injury, property damage, or death, the contractor is in compliance with contract documents material to the condition or defect that was the proximate cause of the personal injury, property damage, or death.

TEX. CIV. PRAC. & REM. CODE ANN. § 97.002.

**E.      Scope of Liability Shield**

In their motions for summary judgment and on appeal, ISI and Guerra contend section 97.002 shields them from the Markhams' tort and contract claims, and we must construe the scope of the statute's liability shield.  To determine the shield's scope, we begin with the statute's words. *See TGS–NOPEC*, 340 S.W.3d at 439; *City of Dallas*, 304 S.W.3d at 384.

*1.      Claimant Informs Types of Claims*

The statute states that, under certain circumstances, a contractor "is not liable to a claimant." TEX. CIV. PRAC. & REM. CODE ANN. § 97.002.  Because neither section 97.002 nor its chapter explicitly define the word claimant, nor do the section's or chapter's contexts give claimant "a different or more precise definition," *see TGS–NOPEC*, 340 S.W.3d at 439, we will begin with its common meaning as given in dictionary definitions, *see Tex. State Bd. of Exam'rs of Marriage & Family Therapists*, 511 S.W.3d at 35; *Colorado Cty.*, 510 S.W.3d at 448.

One dictionary defines claimant as "one that asserts a right or title." *Claimant*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/claimant (last visited April 18, 2022). Another defines claimant as "[s]omeone who asserts a right or demand." *Claimant*, BLACK'S LAW DICTIONARY (11th ed. 2019).  Neither definition explicitly or implicitly limits the type of claim or cause of action that an assertion of a right, title, or demand may take.  *See Claimant*, MERRIAM-

WEBSTER, https://www.merriam-webster.com/dictionary/claimant (last visited April 18, 2022); *Claimant*, BLACK'S LAW DICTIONARY (11th ed. 2019).

> 2.      *Shield Defined in Terms of Legal Injury*

Continuing our construction analysis, we note that section 97.002 states the applicability requirements for a contractor to "not [be] liable to a claimant for personal injury, property damage, or death arising from the performance of the construction or repair" in certain circumstances. TEX. CIV. PRAC. & REM. CODE ANN. § 97.002.

By its plain language, and contingent on the requirements it identifies, the statute shields a contractor from liability to a claimant seeking damages "for personal injury, property damage, or death arising from the performance of the construction or repair [pertaining] to the condition or defect that was the proximate cause of the personal injury, property damage, or death." *See id.*; *A.S. Horner.*, 2021 WL 1050063, at \*6; *APAC-Tex.*, 2014 WL 887266, at \*2.

This language is like that used in the Tort Claims Act, which, in certain circumstances, waives governmental unit immunity for "property damage, personal injury, and death." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. Just as section 101.021 *waives* immunity based on the nature of the legal injury or damage rather than the type of cause of action or claim, section 97.002 *creates* immunity for qualifying contractors based on the nature of the legal injury or damage rather than the type of cause of action or claim. *Cf.* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021; *VIA Metro. Transit v. Meck*, 620 S.W.3d 356, 370 (Tex. 2020) (section waives immunity).

> 3.      *Immunity is Independent of Type of Claim*

In creating an affirmative defense, the statute's plain language does not restrict the liability shield to a particular type of claim; instead, it grants immunity with respect to a claimant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002 ("A contractor . . . is not liable to a claimant . . . .").

The common meaning of claimant is one who may assert a right or demand—such as a claim in tort, contract, or equity—and that claim or demand would be subject to the liability shield.

Further, the enumerated actionable types of legal injury—i.e., personal injury, property damage, or death—do not limit the type of claim to which the shield applies. *See id.*

Moreover, the Markhams presented no authorities, and we have found none, that allow certain types of claims or causes of action to pierce section 97.002's liability shield.

Thus, we hold that for purposes of section 97.002, a claimant is one who asserts a right or demand, and the section's liability shield extends to all such assertions or claims for personal injury, property damage, or death, where all the other statutory applicability requirements are satisfied. *See id.*

Accordingly, we hold that section 97.002's immunity from liability protects a contractor—who meets all the section's other applicability requirements—against all claims or causes of action "for personal injury, property damage, or death arising from the performance of the construction or repair [pertaining] to the condition or defect that was the proximate cause of the personal injury, property damage, or death." *See id.*

### 4. Immunity Limited by Section's Requirements

We agree with our sister court "that the Legislature enacted the statute to shield contractors who construct or repair highways for TxDOT from liability in situations where it is affirmatively shown that the contractors complied with TxDOT specifications over which they had no control." *See A.S. Horner*, 2021 WL 1050063, at *6. From the statute's plain language and our analysis of it, we do not discern any legislative intent for section 97.002 to provide blanket immunity to a TxDOT contractor or subcontractor against all claims for any circumstances, such as a tort claim or contract dispute between a TxDOT contractor and its subcontractor. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002.

The statute's plain language does not create such a blanket immunity, and we do not construe it that way. *See City of Rockwall*, 246 S.W.3d at 625–26 (rejecting constructions that lead to absurd results). To the contrary, the statute contains multiple applicability requirements to create immunity, which must all be met, such as a legal injury "arising from the performance of the construction or repair [pertaining] to the condition or defect that was the proximate cause of the personal injury, property damage, or death." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002; *A.S. Horner*, 2021 WL 1050063, at *6.

## F.     Establishing Applicability of Affirmative Defense

Before we further construe the statute, we review the relevant summary judgment proof to which the statute will apply. We take as true the undisputed evidence and the evidence favoring the Markhams. *See Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (reviewing a grant of summary judgment and noting that "[u]ndisputed evidence may be conclusive of the absence of a material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence" (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 814 (Tex. 2005))).

Having reviewed the record, we conclude that—for summary judgment purposes—it establishes several facts pertaining to the statute's applicability.[1]

Specifically, the Markhams' tenth amended petition alleges that, for the county in which the accident occurred, ISI was TxDOT's guardrail maintenance contractor, and Guerra was ISI's guardrail maintenance subcontractor. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002 ("A contractor who constructs or repairs a highway, road, or street for the Texas Department of Transportation . . . .").

---

[1] Although pleadings are not normally competent summary judgment proof, *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (citing *Hidalgo v. Sur. Sav. & Loan Ass'n*, 462 S.W.2d 540, 543 (Tex. 1971)), in this case, because some of the statute's applicability requirements hinge on what the plaintiff has pled, the pleadings satisfy some of the statute's applicability requirements, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002.

The Markhams' petition shows they are claimants seeking damages for personal injury and death, *see id.* ("a claimant for personal injury . . . or death"), which arose from ISI's and Guerra's work, *see id.* ("arising from the performance of the construction or repair").

And finally, the petition alleges ISI's and Guerra's work proximately caused the injuries and death. *See id.* ("the condition or defect . . . was the proximate cause of the personal injury . . . or death").

Thus, for summary judgment purposes, the record establishes these applicability requirements: (1) ISI and Guerra are contractors for TxDOT, (2) whom the Markhams are suing for personal injury and death allegedly arising from ISI and Guerra's contract performance (3) that the Markhams allege was the proximate cause of the complained of personal injury and death. *See id.*

## G. Disputed Facts for Affirmative Defense

The statute's remaining applicability requirements are disputed: (1) whether ISI and Guerra's guardrail work constitutes repairs, (2) whether the guardrail is part of a highway, and (3) whether ISI and Guerra were "in compliance with contract documents material to the condition or defect." We consider each requirement in turn.

### 1. Guardrail Work Constitutes Repairs

#### a. Parties' Arguments

The first disputed applicability requirement we address is whether ISI and Guerra's restorative work on the guardrail comprises "repairs." *See id.* (limiting the liability shield to "[a] contractor who constructs or *repairs* a highway, road, or street" (emphasis added)).

ISI and Guerra argue that under the common meaning of repairs, their restorative work on the guardrail constituted repairs, and their performance under the contract meets the statutory requirement of repairs.

The Markhams contend that ISI's contract is titled as a maintenance project, and "maintenance" does not qualify as repairs. Thus, ISI and Guerra's performance under the contract does not meet the statutory requirements for repairs.

We disagree with the Markhams' view.

### b. TxDOT-ISI Contract

The cover page of the contract between TxDOT and ISI calls for "IMPROVEMENTS OF 0.001 MILES of ROUTINE MAINTENANCE in BEXAR COUNTY." The "INDEX OF SHEETS" page subtitle reads "PLANS OF PROPOSED HIGHWAY ROUTINE MAINTENANCE CONTRACT."

However, contrary to the Markhams' view, the maintenance contract expressly includes the following types of work ISI was to perform:

> All work for **guardrail *repair***, delineation, attenuator *repair*, post and cable fence *repair*, chain link fence *repair*, cable barrier *repair*, concrete rail/concrete barrier *repair* and moving is callout work and a written work order will be issued as work is needed. A work order will consist of the location of each *repair*, the bid items for the *repairs* and the approximate quantity of work to be paid. Work orders will not include a list of required materials for the *repairs*. Any additional work performed not specified in the work order will require prior approval for payment. (emphasis added).

Further, the special provision applicable to guardrail repair is titled "Guard Fence Repair," and it describes how the work will be paid for under categories such as "Repair Rail Element (W Beam)," "Repair Rail Element (Thrie-Beam)," and "Repair Rail Element (Thrie-Beam Transition to W Beam)."

The contract's plain language explicitly requires ISI to perform guardrail repairs.

### c. Statute's Meaning of Repairs

To determine the statute's meaning of the word repairs, we begin with the statute's words. *See Colorado Cty*, 510 S.W.3d at 448; *TGS–NOPEC*, 340 S.W.3d at 439.

Because section 97.002 does not expressly define the word repairs, nor does its context give repairs "a different or more precise definition," *see TGS–NOPEC*, 340 S.W.3d at 439, we will begin with its common meaning as given in dictionary definitions, *see Tex. State Bd. of Exam'rs of Marriage & Family Therapists*, 511 S.W.3d at 35; *Colorado Cty.*, 510 S.W.3d at 448.

One dictionary defines repair as "to restore by replacing a part or putting together what is torn or broken." *Repair*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/repairs (last visited April 18, 2022). Another defines it as "[t]he process of restoring something that has been subjected to decay, waste, injury, or partial destruction, dilapidation, etc." *Repair*, BLACK'S LAW DICTIONARY (11th ed. 2019).

### d. Guardrail Work Constituted Repairs

With these definitions in mind, we assess the applicability of the statute by reviewing the summary judgment evidence. The Markhams alleged, and for summary judgment purposes ISI and Guerra agreed, that ISI and Guerra performed restorative work on the guardrail where the accident occurred. Thus, for summary judgment purposes, it is undisputed that ISI and Guerra "restore[d] by replacing a part or putting together [a portion of guardrail that was] torn or broken." *See Repair*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/repairs (last visited April 18, 2022).

Applying the common meaning of repairs to the summary judgment evidence, we hold that ISI and Guerra's restorative work on the guardrail constitutes repairs under section 97.002. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002; *Colorado Cty*, 510 S.W.3d at 448; *TGS–NOPEC*, 340 S.W.3d at 439.

### 2. Guardrail as Part of Highway

The second statutory applicability requirement we address is whether work on a guardrail qualifies as work on "a highway, road, or street." *See* TEX. CIV. PRAC. & REM. CODE ANN.

§ 97.002 (limiting the liability shield to "[a] contractor who constructs or repairs a highway, road, or street").

### a. Parties' Arguments

ISI and Guerra argue that under section 221.001 of the Transportation Code, a guardrail is "a necessary structure related to a public road," and is thus part of a highway. *See* TEX. TRANSP. CODE ANN. § 221.001.

The Markhams assert in their tenth amended petition that the allegedly defective "guardrail . . . constituted a premises defect; i.e., a condition of the state highway system," yet they also argue that the commonly understood meaning of highway is "the physical surface of the road upon which vehicles travel," and it does not include a guardrail.

We agree with the contractors.

### b. Statute's Meaning of Highway

To determine the statute's meaning of the word "highway," we begin with the statute's words. *See Colorado Cty*, 510 S.W.3d at 448; *TGS–NOPEC*, 340 S.W.3d at 439. Section 97.002 does not (1) list guardrail repair as a type of repairs to a highway, (2) expressly define the word highway, or (3) through its context give highway "a different or more precise definition." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002; *Colorado Cty*, 510 S.W.3d at 448; *TGS–NOPEC*, 340 S.W.3d at 439. Therefore, we will begin with the common meanings for guardrail and highway as given in dictionary definitions. *See Tex. State Bd. of Exam'rs of Marriage & Family Therapists*, 511 S.W.3d at 35 ("To determine a statutory term's common, ordinary meaning, we typically look first to their dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities."); *Colorado Cty.*, 510 S.W.3d at 448.

One definition for guardrail is "a barrier placed along the edge of a highway at dangerous points." *Guardrail*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/guardrail (last visited April 18, 2022).

One definition for highway is "a public way." *Highway*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/highway (last visited April 18, 2022). Another definition is "[a] free and public roadway or street that every person may use." *Highway*, BLACK'S LAW DICTIONARY (11th ed. 2019).

These definitions do not explicitly include or exclude a guardrail as part of a highway, but we can "consider the term's usage in other statutes [and] court decisions" to construe the term highway. *See Tex. State Bd. of Exam'rs of Marriage & Family Therapists*, 511 S.W.3d at 35; *Colorado Cty.*, 510 S.W.3d at 448. The Transportation Code defines highway to "include[] . . . part of a . . . public road . . . or other necessary structure related to a public road." TEX. TRANSP. CODE ANN. § 221.001; *accord State v. Fid. & Deposit Co. of Md.*, 223 S.W.3d 309, 311 (Tex. 207) (per curiam). And in construing section 221.001, the supreme court determined that an "'other necessary structure related to a public road' is something that likewise pertains to the physical function of the road, such as a *guard rail*."[2] *Fid. & Deposit Co. of Md.*, 223 S.W.3d at 312 (emphasis added).

### c. Guardrail Repairs are Highway Repairs

Considering the definition of highway in Transportation Code section 221.001 and the supreme court's determination that a highway's guardrail fits in that definition, we hold that, for purposes of section 97.002, repairs to its guardrail constitute repairs to a highway. *See* TEX. CIV.

---

[2] In other decisions not construing section 221.001, the court has considered highway guardrails as part of the highway. *Tex. Dep't of Transp. v. Perches*, 388 S.W.3d 652, 656 (Tex. 2012) (per curiam) (remarking that guardrails "define the roadway"); *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (per curiam) (discussing "the highway median's slope and [its] lack of safety features, such as barriers or guardrails").

PRAC. & REM. CODE ANN. § 97.002 (affirmative defense); TEX. TRANSP. CODE ANN. § 221.001 (necessary structure); *Fid. & Deposit Co. of Md.*, 223 S.W.3d at 312 (guardrail part of highway). Applying this construction to the summary judgment evidence, we conclude that ISI and Guerra's repairs to the guardrail constitute repairs to a highway under section 97.002. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002 (affirmative defense); *Tex. State Bd. of Exam'rs of Marriage & Family Therapists*, 511 S.W.3d at 35 (statutory construction); *Colorado Cty.*, 510 S.W.3d at 448.

### 3. Compliance with Contract Documents

The third statutory applicability requirement we address is whether ISI and Guerra's repairs complied with the applicable contract documents. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002 (limiting the liability shield to a "contractor [who] is in compliance with contract documents material to the [alleged] condition or defect").

#### a. Parties Arguments'

ISI and Guerra argue that they complied with the contract documents controlling the guardrail height because (1) the contract's specifications required them to replace the damaged guardrail at the same height as the guardrail on either side of the section they replaced and (2) the Engineer had ultimate authority to decide contract requirements, and he approved the work.

The Markhams insist that ISI and Guerra did not comply with the contract documents because the TxDOT standard height for a guardrail is twenty-seven inches, and it is undisputed that the repaired guardrail section was less than twenty-seven inches in height.

To determine whether ISI and Guerra complied with the controlling contract documents, we must first construe them, which we do using well-known principles of contract construction.

#### b. Contract Construction Principles

"In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341

S.W.3d 323, 333 (Tex. 2011); *accord Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "[W]e must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *accord Coker*, 650 S.W.2d at 393. "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Coker*, 650 S.W.2d at 393; *accord Italian Cowboy*, 341 S.W.3d at 333.

### c.     Contract Documents

The TxDOT-ISI contract incorporates by reference TxDOT's Standard Specifications for Construction and Maintenance of Highways, Streets, and Bridges, and Special Provisions, including Special Provision 770–050, "Guard Fence Repair." The ISI-Guerra subcontract incorporates "all of the terms of the agreement between [TxDOT] and [ISI]" including the TxDOT standard specifications and special provisions.

### d.     Controlling Portions of Contract Documents

The TxDOT-ISI contract states that special provisions "govern and take precedence over the specifications enumerated [in the TxDOT-ISI contract] wherever in conflict therewith." The TxDOT-ISI contract includes, inter alia, Special Provision 770–050, Item 770, and Item 5.1.

Special Provision 770–050 consists of a single page which deals primarily with payment matters, and its work methods and measurement provisions do not conflict with or affect the applicable portions of Item 770.

Item 770, "Guard Fence Repair," directs the contractor to "[p]lace rail to a smooth line and grade, with posts plumb to the correct height, in accordance with the plans."

The plans state that "[a]ll work for guardrail repair [will be initiated by] a written work order . . . as work is needed." The plans also incorporate the "Standard Specifications for

Construction and Maintenance of Highways, Streets, and Bridges," under "General Requirements and Covenants," Item 5 describes "Control of the Work."

Item 5.1 reads as follows:

**5.1. Authority of Engineer.** The Engineer has the authority to observe, test, inspect, approve, and accept the work. The Engineer decides all questions about the quality and acceptability of materials, work performed, work progress, Contract interpretations, and acceptable Contract fulfillment. The Engineer has the authority to enforce and make effective these decisions.

The Engineer acts as a referee in all questions arising under the terms of the Contract. The Engineer's decisions will be final and binding.

Item 5.1 authorizes the Engineer to "inspect, approve, and accept the work," and it delegates the ultimate authority to "decide[] *all* questions about the quality and acceptability of . . . work performed, . . . , Contract interpretations, and acceptable Contract fulfillment" to the Engineer, whose "decisions [are] final and binding." (emphasis added).

   e.   Construing Contract Documents

Having reviewed the contract documents, we conclude they are not ambiguous because their plain language "can be given a certain or definite legal meaning or interpretation." *See Coker*, 650 S.W.2d at 393.

Item 5.1's plain language gives the Engineer authority to decide what standards and specifications apply for a contract and for any work order issued under that contract. It vests the Engineer with final and binding authority to decide all contract questions, including determining whether a contractor's work is acceptable and fulfills the contract requirements. And there are no provisions in the other contract documents that constrain the Engineer's authority under Item 5.1.

Thus, construing the contract documents together, we hold that for highway guardrail repairs, (1) the Engineer may determine which specifications apply, including the height of the guardrail; (2) the Engineer's acceptance of the work is conclusive evidence that the contractor's

work fulfilled the contract requirements; and (3) the Engineer's decisions on the acceptability of the work and on contract fulfillment are final and binding.[3]

####   f.   Considering the Statute and Contract Together

Given our construction of the statute and the contract documents, we now consider whether the Engineer's acceptance of the work constitutes "compliance with [relevant] contract documents" under section 97.002; we conclude that it does. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002.

Item 5.1 authorizes the Engineer to "observe, test, and inspect" the work for its compliance with contract requirements, and it vests in the Engineer the ultimate decision on "acceptable [c]ontract fulfillment." Thus, we hold that the Engineer's acceptance of the highway repair work— from which work the claims for personal injury, property damage, or death arose—constitutes "compliance with contract documents material to the condition or defect that was the [alleged] proximate cause of the personal injury, property damage, or death." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002; *A.S. Horner, Inc. v. Navarrette*, No. 08-18-00044-CV, 2021 WL 1050063, at *6 (Tex. App.—El Paso Mar. 19, 2021, no pet.).

Having construed the contract documents and their interaction with section 97.002, we turn to the summary judgment evidence.

####   g.   Summary Judgment Evidence

The summary judgment evidence shows work order G-133-NE tasked ISI to repair fifty linear feet of guardrail per Item 770 of TxDOT's standard specifications, and Item 770 required ISI and Guerra to "[p]lace rail to a smooth line and grade."

---

[3] We construe the contract as a matter of law, but we note that TxDOT's Director of Maintenance Division averred that "[I]f the engineer has a reason to make changes to the contract that may or may not have conflicts with that specification, he has the authority to do so."

Although the contractors and the Markhams disagree about what height the repaired section of the guardrail should have been, their differing views are made irrelevant by the Engineer's acceptance of the work. As we have explained, the Engineer had final and binding authority to determine whether ISI and Guerra's work was in compliance with contract documents. It is undisputed, and the summary judgment evidence conclusively establishes, that the TxDOT Engineer approved and accepted the work which was the basis of the Markhams' claims, and the Engineer's acceptance of that work determines as a matter of law that ISI and Guerra were in "compliance with contract documents material to the condition or defect that was the [alleged] proximate cause of the personal injury, property damage, or death." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002.

## H. Affirmative Defense Established

To be entitled to summary judgment, ISI and Guerra had to conclusively establish that they met each of section 97.002's applicability requirements. *See KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015) (summary judgment on affirmative defense); *see also Town of Dish v. Atmos Energy Corp.*, 519 S.W.3d 605, 608 (Tex. 2017) (same).

As we explained above, applying our construction of section 97.002 to the summary judgment evidence, we conclude that ISI and Guerra established as a matter of law each applicability requirement of the statutory affirmative defense. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002 (affirmative defense); *Bradshaw*, 457 S.W.3d at 79 (summary judgment). Specifically, ISI and Guerra were contractors who repaired a guardrail—which is part of a highway—for TxDOT and the contractors had complied with the contract documents material to the alleged proximate cause of the personal injury and death. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002; *Tex. State Bd. of Exam'rs of Marriage & Family Therapists*, 511 S.W.3d at 35 (statutory construction); *Colorado Cty.*, 510 S.W.3d at 448 (same).

Thus, ISI and Guerra were entitled to judgment as a matter of law against all the Markhams' claims.  *See KCM Fin. LLC*, 457 S.W.3d at 79; *see also Town of Dish*, 519 S.W.3d at 608.

We sustain ISI and Guerra's first issue.

### THIRD-PARTY BENEFICIARY, CONCERT OF ACTION CLAIMS

**A.    Contractors' Arguments**

In their second issue, ISI and Guerra argue in the first instance that section 97.002 shields them from the Markhams' breach of contract claims, which were based on the Markhams' assertion of third-party beneficiary status.

ISI and Guerra argue in the alternative that because the TxDOT-ISI contract expressly prohibits any person or entity from claiming third-party beneficiary status under the contract, and the ISI-Guerra contract expressly incorporates the TxDOT-ISI contract, the Markhams' third-party beneficiary claims necessarily fail.  *See First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) ("To create a third-party beneficiary, the contracting parties must have intended to grant the third party the right to be a 'claimant' in the event of a breach.").

In Guerra's third issue, it argues in the first instance that section 97.002 shields it from the Markhams' concert of action claims.  Guerra argues in one of several alternatives that concert of action is not a viable cause of action in this case.

**B.    Markhams' Arguments**

The Markhams argue, as a threshold matter, that this court does not have appellate jurisdiction over the breach of contract or concert of action claims because "the general Texas statu[t]e permitting appeal of interlocutory orders does not include an order denying summary judgment on a third-party beneficiary or concerted action claim[]."  *See generally* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (interlocutory order appeals).

The Markhams also argue in support of their third-party beneficiary and concert of action claims, but their threshold and merits arguments both fail.

## C.      Appellate Jurisdiction

Section 51.014 authorizes an appeal from an interlocutory order that "grants or denies a motion for summary judgment filed by a contractor based on Section 97.002." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(15). The record conclusively establishes that in their respective motions, ISI and Guerra each moved for summary judgment against *all* the Markhams' claims based on immunity from liability under section 97.002, and the trial court denied their motions. Thus, ISI and Guerra met the statutory requirements to appeal from the trial court's denial of their motions for summary judgment on the Markhams' breach of contract and concert of action claims. *See id.*

Therefore, we have appellate jurisdiction to review ISI's and Guerra's motions for summary judgment against the Markhams' third-party beneficiary and concert of action claims.

## D.      Affirmative Defense Applies

As we determined above, because the summary judgment evidence conclusively establishes their affirmative defense under section 97.002, ISI and Guerra were entitled to judgment as a matter of law against all the Markhams' claims, including their tort claims against ISI and their third-party beneficiary and concert of action claims against ISI and Guerra. *See KCM Fin. LLC*, 457 S.W.3d at 79; *see also Town of Dish*, 519 S.W.3d at 608.

Therefore, based on their affirmative defense arguments, we sustain ISI and Guerra's second issue and Guerra's third issue.

### CONCLUSION

Section 97.002's immunity from liability extends to all the Markhams' claims, and the summary judgment evidence conclusively establishes that ISI and Guerra met each of the

applicability requirements to invoke immunity from liability under section 97.002. Specifically, in repairing the guardrail on Highway 281, which work was inspected, accepted, and approved by the Engineer, ISI and Guerra were highway repair contractors who complied with their contract documents. Thus, under section 97.002, ISI and Guerra are shielded from liability from all the Markhams' claims. Therefore, ISI and Guerra were entitled to judgment as a matter of law on their affirmative defense, and the trial court erred when it denied their motions. Accordingly, we reverse the trial court's order and render judgment dismissing all the Markhams' claims against ISI and Guerra.

Patricia O. Alvarez, Justice